675 F.2d 116
 Dennis L. WEAVER, Plaintiff-Appellant,
v.
Arnold R. JAGO; Terry Morris; Paul Blair; Sergeant (John
Doe) Thompson; (John Doe) Parker; George F. Denton; Randy
Halcolm; Larry Caudill; James Colgrove; Raymond Shaner; H.
Bates; Ronald Marshal; and L. Rupp, Defendants-Appellees.
 No. 80-3524.
 United States Court of Appeals,
Sixth Circuit.
 Submitted on Briefs March 18, 1982.
Decided April 9, 1982.
 
 Dennis L. Weaver, pro se.
 William J. Brown, Atty. Gen. of Ohio, J. Anthony Logan, Asst. Atty. Gen., Columbus, Ohio, for defendants-appellees.
 Before LIVELY and MERRITT, Circuit Judges and PECK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 This is an appeal from a district court order granting summary judgment to the State Defendants in a civil rights action under 42 U.S.C. § 1983. Plaintiff-appellant Dennis L. Weaver is a prisoner in the Southern Ohio Correctional Facility at Lucasville, Ohio. His pro se complaint alleged that the defendants had violated his freedom of religion, his right to govern his personal appearance and his right to the free expression of his African heritage. He further alleged deprivation of personal property and of educational and other privileges.
 
 
 2
 The State Defendants moved to dismiss Weaver's complaint for failure to state a claim upon which relief could be granted and for lack of subject matter jurisdiction. In the alternative, the defendants moved for summary judgment under Fed.R.Civ.Pro. 56. This motion was supported by an affidavit of the former deputy superintendent of custody at Lucasville.
 
 
 3
 The district court reviewed the Supreme Court decision in Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), and quoted at length passages from that decision which indicate that federal courts must give great deference to prison administrators in matters essential to the maintenance of prison security, discipline, and operation. The district court concluded, without analysis, that Weaver's complaint clearly sought to have the court substitute its judgment for that of the prison administration in matters that "bear little, if any, relationship to Constitutional deprivation."
 
 
 4
 To the extent that Weaver's complaint challenged prison procedures and practices regarding personal possessions and physical accommodations, or challenged deprivations of visitation, educational and other privileges, we agree with the conclusion of the district court. These allegations appear to be precisely the sort of "judgment calls" regarding prison management that Bell v. Wolfish requires be left to the expertise of prison administrators. 441 U.S. at 562, 99 S.Ct. at 1886.
 
 
 5
 To the extent that Weaver's complaint alleged interference with his right to the free exercise of his religious beliefs, we disagree with the conclusion of the district court that Weaver sought only to involve the court in matters bearing little relationship to constitutional deprivation. Weaver asserted that he was subjected to a number of disciplinary actions for failure to have his hair cut in conformity with prison regulations. He further alleged that he is part Cherokee Indian, and that he subscribes to a Cherokee religious belief that he is made in the image of the "Great Spirit", and that according to this belief the cutting of his hair would "indicate disgrace, humiliation, or death in his family."
 
 
 6
 Though Bell v. Wolfish admonishes federal courts not to assume the functions of prison officials, it also recognizes and affirms the established principle that constitutional protections do not stop at the prison gates. 441 U.S. at 545, 99 S.Ct. at 1877. The Court noted that the constitutional rights of prisoners are to be "scrupulously observed", id. at 562, 99 S.Ct. at 1886, while reaching a "mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application." Id. at 546, 99 S.Ct. at 1877, quoting Wolff v. McDonnell, 418 U.S. 539, 556, 94 S.Ct. 2963, 2974, 41 L.Ed.2d 935 (1974).
 
 
 7
 There can be little doubt that Weaver's complaint asserts a claim that his first amendment right to freedom of religious expression was violated. As the Supreme Court has stated,
 
 
 8
 resolution of (what is a religious belief, or practice) ... is not to turn upon a judicial perception of the particular belief or practice in question; religious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection.
 
 
 9
 Thomas v. Review Bd. of Indiana Employment Sec., 450 U.S. 707, 101 S.Ct. 1425, 1430, 67 L.Ed.2d 624 (1981). This Court has also noted that, "There is no requirement that a religion meet any organizational or doctrinal test in order to qualify for First Amendment protection." Sequoyah v. Tennessee Valley Authority, 620 F.2d 1159, 1163 (6th Cir. 1980) (a case that also notes that the Cherokees have a religion within the meaning of the Constitution).
 
 
 10
 In the present case Weaver has alleged that his religious beliefs counsel him not to cut his hair. Whether Weaver actually has such a belief and whether that belief is entitled to first amendment protection is a question that cannot be summarily dismissed as bearing little relationship to constitutional deprivation. "(I)f the belief asserted is 'philosophical and personal rather than religious,' or is 'merely a matter of personal preference,' and not 'one of deep religious conviction, shared by an organized group,' it will not be entitled to First Amendment protection." Fiedler v. Marumsco Christian Sch., 631 F.2d 1144 (4th Cir. 1980), citing Wisconsin v. Yoder, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972). Of course, if the belief is one of deep religious conviction, then Weaver is entitled to first amendment protections consistent with his status as a prisoner. See Bell v. Wolfish, supra, 441 U.S. at 545-46, 99 S.Ct. at 1877.
 
 
 11
 Nothing in the defendants' affidavit supporting their summary judgment motion refutes Weaver's claim that his hair length has religious significance. Rather, the affidavit recites in conclusory manner that the hair length regulations are necessary for the purposes of prisoner identification, security, hygiene, and safety. Therefore, for the purposes of defendants' motion for summary judgment, asserting as it must under Rule 56 that no genuine issue of fact exists, Weaver's claim that the exercise of his religious beliefs forbids cutting his hair must be taken as true.
 
 
 12
 We believe that with the case in this posture Weaver is entitled to have the court balance his constitutional interests against legitimate state interests in operating its prisons. Certainly the "circumstance of imprisonment is ... a factor that bears on the lawfulness of limitations" of overt acts prompted by religious beliefs. Kennedy v. Meacham, 540 F.2d 1057, 1061 (10th Cir. 1976).
 
 
 13
 Bell v. Wolfish, supra, does not preclude this review, but rather exemplifies the type of balancing required in cases where prisoners challenge prison practices on constitutional grounds. Bell v. Wolfish involved, among other things, a first amendment challenge to a prison's denying inmates hardbound publications except those mailed directly from publishers. The Supreme Court balanced the prisoners' first amendment interests against the legitimate interests in prison security asserted by the defendants. In that balance the expert judgment of the prison administration as to the necessity of the restriction was given deference. However, that necessity was treated as but one factor in weighing the competing interests. The Court in Bell v. Wolfish concluded that the state's interests outweighed those of the prisoners when all factors were considered, including the availability of literature from other sources and the neutral application of the restriction without regard to content of the prescribed materials. Taking all these factors into account, the Court concluded that the prison's restriction was a reasonable time, place, and manner restriction of a first amendment right. 441 U.S. at 552, 99 S.Ct. at 1881.
 
 
 14
 With the present case in its summary judgment posture Weaver has asserted an unrefuted claim that his right to free exercise of his religious beliefs has been violated. The prison has asserted the necessity of the regulation challenged by Weaver to promote security, health and safety interests. In order to "scrupulously observe" Weaver's constitutional rights, the district court must weigh these competing interests. This judicial balancing may well require further factual development, particularly with regard to the defendants' assertions of the necessity of the hair length regulation.
 
 
 15
 While recognizing that the courts may not substitute their judgments for those of prison administrators in matters of prison procedure and management, it nonetheless remains true that the "asserted justification of such restrictions on religious practices based on the State's interest in maintaining order and discipline must be shown to outweigh the inmates' First Amendment rights," and "only those interests of the highest order and those not otherwise served can overbalance legitimate claims to the free exercise of religion." Kennedy v. Meacham, supra, at 1061. We are of the opinion that the state must do more than simply offer conclusory statements that a limitation on religious freedom is required for security, health or safety in order to establish that its interests are of the "highest order."
 
 
 16
 For the reasons stated above, the judgment of the district court granting summary judgment to the defendants is REVERSED and the cause is REMANDED for further proceedings consistent with this decision.